IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CHAPTER 11 |
| NANCY P. VENCILL, ) | |
|       DEBTOR. ) | CASE NO.  10-72956 |
| _____ | |
| UNITED STATES TRUSTEE ) | |
| ) | |
| v. ) | MOTION TO DISQUALIFY COUNSEL |
| ) | |
| ROBERT T. COPELAND, ESQ. and ) | |
| COPELAND & BIEGER, P.C. ) | |

## MEMORANDUM DECISION

The matter before the Court is the objection raised on the ground of attorney/client privilege to questions seeking disclosure of the particulars of a conversation which is indicated to have taken place in the month of September, 2010, prior to the filing of this bankruptcy case, between Ms. Vencill and Robert T. Copeland, Esq. concerning certain real property which the former wanted to transfer to her son, Paul Robert Vencill, III, and did in fact transfer to him during that same month prior to filing her Chapter 11 bankruptcy petition in this Court on December 21st of that year.  These questions were posed by counsel for the United States Trustee and objected to by Mr. Copeland at the August 16, 2011 evidentiary hearing upon the former's Motion to Disqualify the latter as Counsel for the Debtor-in-possession in this case, which employment was previously approved by this Court without objection on January 13, 2011.  At that time, however, although the fact, but not the date, of such transfer was disclosed in the Statement of Financial Affairs ("SOFA") filed in this case on December 28, 2010, there was

no indication that the transfer had occurred or may have occurred[1] subsequent to the commencement of Mr. Copeland's services to Ms. Vencill or that he may have counseled Ms. Vencill about it.

The transfer in question was of a parcel of property containing 56.58 acres, apparently unimproved, located at Clinch Mountain, Lebanon, Virginia at a sales price of either $16,400, the amount stated in the Debtor's Statement of Financial Affairs, or $16,000, the amount contained in other pleadings filed with respect to this transaction. That price was apparently determined with respect to the "use value" of such property as determined for Russell County

---

[1] The reason for the Court's uncertainty on this point is that although the United States Trustee offered and obtained the admission of more than twenty-five exhibits at the hearing, a copy of the deed in question from Ms. Vencill to her son was not one of them. In his Amended Motion to Disqualify filed on August 11, 2011 the United States Trustee alleged that the deed in question was executed on September 24, 2010 (¶ 6) and recorded on September 27, 2010 (¶ 7). This allegation was not specifically admitted or denied in Mr. Copeland's Amended Response to United States Trustee's Motion To Disqualify Counsel, filed on August 15, 2011, the day before the hearing, but on August 19, 2011, three days after the hearing, the Debtor filed an amended SOFA, which among other things added to the disclosures originally made the date of "09/01/2010" as the indicated date of the transfer in question to the son. In contrast, the Debtor in her Amended SOFA, filed by Mr. Copeland's firm on her behalf, did not supplement the disclosures previously made with the date of the payment to the firm from Ms. Vencill of a $10,000 retainer for attorney fees and a court filing fee of $1,039 [SOFA states $1,089] in the immediately preceding question although that question specifically sought the date of such payment. Neither is such date disclosed in any of the other filings made in this case by the Debtor or by the firm. Considering that at the time the amended SOFA was filed, Mr. Copeland was, to state the painfully obvious, on notice that his pre-petition dealings with his client were under a microscope, the failure to provide such required disclosure is both surprising and troubling to the Court. In the Amended Response to the Motion it is stated that the firm withdrew $2,000 from the $10,000 retainer on September 21, 2010. While the Court thinks it likely that the indicated date was intended to be December 21, the day the petition was filed, rather than September 21, that is simply the Court's surmise and the statement made is as noted. The identity of the attorney who prepared the deed is not disclosed by the evidence. As to the timing of the conversation in question in relation to the preparation and signing of the deed, however, the Court notes that Mr. Copeland on page 4 of his Amended Response to the disqualification motion states that the privilege was being claimed "regarding the conversations she had prior to the time of the transfer of the property to her son."

2

real estate tax purposes. Both Ms. Vencill and Mr. Copeland represent that they believed the value in question to be the full fair market value tax assessment for the property. According to Exhibit Y the fair market tax assessment value determined for Russell County real estate tax purposes was $85,700. After this discrepancy was raised by counsel for one of Ms. Vencill's creditors at the meeting of creditors, the Debtor made demand upon her son either to return the property or to pay the difference between the consideration paid and the actual fair market value of the property. He agreed to the latter and the Debtor filed a motion noticed to creditors to approve the sale of the property for an additional $69,000 paid by the son to the bankruptcy estate. This motion, after a hearing, was approved by the Court by an order entered June 14, 2011.

The United States Trustee asserts that the conversation in question is not subject to a claim of privilege for two reasons: that the Debtor waived the privilege by testifying about advice given to her by Mr. Copeland concerning other matters without claiming the privilege, and that the communication is excluded from protection by the crime/fraud exception to the attorney/client privilege. As to the first ground, while the Debtor did answer certain questions at the hearing inquiring about the nature of the advice Mr. Copeland had given to her about the fiduciary duties of a Chapter 11 bankruptcy debtor acting as debtor-in-possession and information she had provided to him for the preparation of the bankruptcy schedules, the Court does not find that she testified about any legal advice he had provided to her prior to filing bankruptcy and which she had then acted upon. Accordingly, the Court concludes that other testimony the Debtor gave at the hearing did not amount to a waiver of her right to claim the privilege with respect to the subject of her transfer of the property in question to her son.

As to the second ground, however, the Court concludes that under the evidence before it the crime/fraud exception to the attorney/client privilege applies for the reasons detailed below.

It is apparent that by September of 2010 at the latest Ms. Vencill knew that she was in serious financial trouble. Mr. Copeland's first recorded time entry relating to his representation of Ms. Vencill was on September 14, 2011. Not only was she personally in financial straits, but the family business, Lebanon Equipment Company, of which she was the president and 100% owner, was also under severe financial stress. The company actually filed its own Chapter 11 bankruptcy petition on November 5, 2010 and its filed Statement of Financial Affairs indicates that it paid its bankruptcy counsel a retainer of $8,700 for attorney fees and costs on September 16, 2010, just two days after Ms. Vencill's meeting with Mr. Copeland. Although she owned substantial assets, she had even larger liabilities. According to the Summary of Schedules she filed with this Court on December 28, 2010, she listed assets valued at $1,851,821 and liabilities of $2,743,398 and there is nothing in her Schedules or SOFA to indicate that there had been any substantial change in her financial condition between September and December. According to the Proof of Claim filed by the Internal Revenue Service in this case, to which no objection appears to have been filed, introduced as Exhibit U on behalf of the United States Trustee, she owed in September 2010 federal income taxes or interest for the years 2004, 2005, 2007 and 2008,[2] had not filed a return for 2009, and had been assessed civil penalties pursuant to section 6672 of the Internal Revenue Code, apparently for unpaid payroll taxes owing from Lebanon Equipment, for the tax periods ending 9/30/2009, 12/31/2009, 3/31/2010, and 6/30/2010.

---

[2] In Schedule E to her petition Ms. Vencill scheduled undisputed tax liabilities to the IRS for these years in the aggregate amount of $51,407.32 and Virginia state taxes for the 2007 and 2008 years of $10,927.70.

According to that Proof of Claim similar civil penalties were also assessed for the tax periods ending 9/30/2010 and 12/31/2010.

Against this backdrop, having already engaged experienced bankruptcy attorneys for herself and her company, Ms. Vencill seems to have decided that there was an item of personal business which she wanted to take care of before filing bankruptcy, specifically, deeding some property to her son[3]. She says that she intended to sell the property to him for its fair market value and relied on the receipt from the County Treasurer to determine that amount. According to the testimony of the Russell County Treasurer the actual tax bills sent by his office to the owners of real estate in that county set forth both the full fair market assessed value of each tax parcel and, if applicable, the use value of such property. The receipts issued by that office upon payment of the bills noted the values upon which tax was assessed, which would have been either the full assessed value or the use value, as applicable. Ms. Vencill testified that she didn't know anything about use value, but Exhibit Z offered by the United States Trustee, indicated that the 1999 application for "use tax" valuation for real estate tax purposes to the County filed by her husband for the property in issue was signed by her as co-owner of the property. Included as a part of this Exhibit is the receipt for the $10 fee paid by Ms. Vencill to file the application. Mr. Copeland acknowledged that he is familiar with "use tax" assessment of real property and volunteered that he owns a farm himself which is taxed according to its use valuation. He testified, however, that he relied on the tax receipt which his client provided to him and did not

---

[3] According to ¶ 3 of the Debtor's "Response to the [United States Trustee's] Motion to Convert or, in the alternative, Appoint a Trustee" it "was her late husband's wish that their son have this parcel of property and it was supposed to have been transferred to him several years prior to the time of its actual transfer."

5

realize that it reflected use valuation rather than full fair market value for the property. After the issue of the property's true value was raised at the meeting of creditors, Ms. Vencill's son quickly agreed to pay a total purchase price more than five times the amount he had paid for the property about six months before. In ¶ 18 of her "Response to the [United States Trustee's] Motion to Convert or, in the alternative, Appoint a Trustee," Ms. Vencill supported her opposition to the relief sought in that motion with the statement "she believes that given her extensive experience in Russell County real estate that she is the best person to try and locate buyers to purchase her properties."

Although in Schedule A filed on December 28, 2010 to her petition Ms. Vencill represented the "current value" of her real property to be $1,125,275, just two days later in response to an inquiry from the United States Trustee she provided to her attorney a Personal Financial Statement dated 12/22/2010[4] listing her real property which she valued at $4,919,000, but she has never revised the amount contained in Schedule A, which the Court therefore assumes reflects her true assessment of her properties' value. This listing included a reference to the property which had been deeded to her son but omitted any valuation for it. This listing was apparently taken from one she had prepared to give financial statements to three banks. Although the fact that these financial statements had been given to the banks was disclosed in the filed SOFA and at the time the petition was filed Mr. Copeland had been representing the Debtor for more than three months, according to her response to the Court's inquiry he had not asked her to provide him with copies of those statements for review. The SOFA also disclosed that within the one year immediately preceding the filing of her petition on December 21, 2010 the

---

[4] Exhibit AA.

Debtor had been a defendant in three legal proceedings against her in the Circuit Court of Russell County, Virginia, one of which was a confession of judgment. The evidence does not disclose when these various proceedings were commenced so the Court is unable to determine which, if any, of them were pending at the time of the conveyance to the Debtor's son.

Bankruptcy Judge Blackwell N. Shelley, now deceased, in his decision in the case of *In re Porter*, 37 B.R. 56 (Bankr. E.D.Va. 1984), examined Virginia law on fraudulent conveyances, noting that "evidence of fraud may be, and generally must be, circumstantial." 37 B.R. at 63. Certain facts attending a transaction have historically been taken "to be the signs [or badges] of fraud; and from which fraud may be inferred." *Id*. Judge Shelley recounted six "badges of fraud," only two of which are possibly applicable to the facts of the present case: "pursuit of the transferor or threat of litigation by his creditors at the time of the transfer" and "lack of or gross inadequacy of consideration for the conveyance." *Id.* It is not necessary to prove the existence of multiple badges of fraud. "[A] prima facie case is established by demonstrating **a** badge of fraud." *Id.* (emphasis added). Although the family relationship of the parties to a transfer by itself is not a badge of fraud, "where the transaction assailed is between . . . near relatives, only slight evidence is required to shift the burden of showing its bona fides." *Id.*, quoting from *Fowlkes v. Tucker*, 164 Va. 507, 180 S.E. 302, 305 (1935).

In analyzing the possible crime/fraud exception to the attorney/client privilege in the context of a pre-petition transfer claimed to have been made with the intent to hinder, delay or defraud creditors, the Court has found a decision by Bankruptcy Judge Tice of the Eastern District of Virginia Bankruptcy Court in the case of *Riggs Nat'l Bank v. Andrews (In re Andrews)*, 186 B.R. 219 (Bankr. E.D. Va. 1995) to be particularly helpful. In that case Judge

Tice declined to grant a protective order to prevent the deposition of the Debtor's attorney concerning certain consultations between client and attorney regarding various transfers and re-titling of assets effected by the client pre-petition, but did allow the claim of privilege with respect to any consultations which occurred after the challenged transactions had taken place. 186 B.R. at 223-24.  Judge Tice quoted from a Fifth Circuit Court of Appeals decision concerning "badges of fraud" as follows:

> "A fraud upon creditors consists in the intention by the debtor to prevent his creditors from recovering their just debts by withdrawing his property from the reach of his creditors." . . . This intention can be found by the existence of certain indicia or badges of fraud. These involve the following considerations: (1) lack of consideration for the transfer; (2) close family relationship between the transferor and the transferee; (3) pending or threatened litigation against the transferor; and (4) insolvency or substantial indebtedness of the transferor. "[W]hile a badge of fraud standing alone may amount to little more than a suspicious circumstance, insufficient in itself to constitute a fraud per se, several of them when considered together may afford a basis from which its existence is properly inferable." *United States v. Fernon*, 640 F.2d 609, 613 (5th Cir.1981) (citations omitted).

186 B.R. at 222-23.  In this case we are dealing with a transfer from a mother to her son, a natural object of her bounty, for a meaningful consideration but one which represented only about 20% of the property's actual value, at a time when, (1) according to her bankruptcy schedules filed approximately three months later, she must have been clearly and seriously insolvent, and (2) had already consulted experienced bankruptcy counsel for herself and her incorporated business.  Although she sold the property to the son for either $16,000 or $16,400 in September, according to her schedules she had only $4,000 in the bank at the time of filing her petition approximately three months later and no cash whatsoever on hand.  It only states the obvious to observe that for understandable personal and family reasons Ms. Vencill wanted to

8

make sure that her son got this property and that it did not become involved in a bankruptcy case which, if she had not already definitely decided upon, at the very least was contemplating, at the time she made the conveyance.  It is not necessary for the Court at this point to decide that Ms. Vencill did anything wrong or that the explanation she has provided is untruthful.  It may well be that her intent was exactly what she claims, which was to sell the property to her son for what she thought was its full value and that Mr. Copeland was none the wiser.  However, as District Judge Kiser held in the case of *Cullinan Assocs. v. Clements (In re Clements)*, 205 B.R. 377 (W.D.Va. 1995), a transferor may be motivated by an intent to hinder or delay creditors even when there is no intent to defraud them, such as when fair and adequate consideration has been paid.  205 B.R. at 380-81.  This Court will follow the holding[5] of Judge Tice in concluding that the confluence of "badges of fraud" associated with this transfer is sufficient to require that information she provided to Mr. Copeland and any questions which she asked him with respect to this transaction[6] and any advice he provided to her about it or how to report it in her bankruptcy schedules and SOFA must be disclosed.  *See* 186 B.R. at 224.  If that disclosure corroborates the account which she and her counsel have provided so far, all well and good.  If

---

[5] The Court acknowledges that the facts of *Andrews* are significantly more compelling than the ones presented in this dispute, but in that case too explanations had been offered suggesting an innocent basis and intent for the transactions which took place.

[6] While each case of course must stand on its own, the Court notes the contrast between the position taken in this case and the one taken in another recent Chapter 11 case in which Mr. Copeland is serving as debtor's counsel in which the clients had transferred ownership of three companies to their son within one year before filing bankruptcy and the United States Trustee objected to approval of his employment.  In that case, *In re Edward and Ruth Byington*, Case No. 11-70729, it was expressly represented by Mr. Copeland, and not disputed by the United States Trustee, that he had not been consulted by or advised the clients about such transaction before it occurred.

not, it may be evidence not only that the transaction in question was motivated by an improper intent to which Mr. Copeland was privy, but also that an attempt has been made to conceal the actual facts of the matter from the Court and other parties in interest.

Because this Court can have no assurance as to the nature of the information provided by Ms. Vencill to her counsel and the advice which he gave her concerning this subject and its possible relevance to other matters which may be in issue in this case or otherwise, the Court, in an effort to balance appropriately insofar as possible the competing interests reflected in the attorney/client privilege and the crime/fraud exception to it, will direct in a contemporaneous order that disclosure be made by the Debtor and Mr. Copeland within ten days of the entry of such order filing under seal with the Court and providing copies to the United States Trustee, subject to protective provisions contained in such order, separate sworn statements providing their respective current recollections of conversations and copies of any notes thereof made by either of them at the time such conversations took place or shortly thereafter and copies of any relevant documents provided by Ms. Vencill to her counsel on or before December 28, 2010 concerning the sale of the property to her son, including specifically its value, and any advice he provided to her concerning the making of such transfer or how it should be reported in the SOFA to her bankruptcy petition.  The order will direct that the United States Trustee and his counsel keep such disclosure in confidence to the extent it provides information not otherwise known and that it shall be used for no purpose other the motion seeking the disqualification of her bankruptcy counsel without having first obtained either the Debtor's consent or the authorization of this Court.

DECIDED this 9th day of September, 2011.

*/s/ William F. Stone, Jr.*
_____
UNITED STATES BANKRUPTCY JUDGE